Civilian pay. — The plaintiff, a former employee of the Patent Office, sued to recover back pay on the ground that his removal was wrongful in that it resulted, as he alleged, from the control exercised over the Patent Office by a certain religious minority. On April 27, 1960, Trial Commissioner W. Ney Evans filed his report finding that the action of the Patent Office in removing plaintiff from the rolls for disability was procedurally correct and was taken in good faith. On the basis of the report of the trial commissioner, and the briefs and argument of the parties, the court, on May 12, 1961, issued an order dismissing plaintiff’s petitions.* The report of the trial commissioner follows:
1. In these consolidated cases[1] plaintiff appears pro se. He is a citizen of the United States, Caucasian, and Protes *699 tant. He was 62 years of age at the time of bis separation for disability from the Patent Office in 1950, as hereinafter recited.
2. (a) The gravamens of plaintiff’s complaints are: (1) that during the period of his employment (1945-1950), “the Patent Office was controlled by a religious minority who were so situated in key and strategic positions as to give them working control of the * * * Patent Office and thus limited promotion possibilities of those of different religious beliefs;” and (2) that, after plaintiff filed an appeal pursuant to Executive Order 9980 (relating to fair employment practices), he “was promptly framed by certain of the officials of the * * * Patent Office, * * * prevented from carrying his appeal to the President’s Fair Employment Board, and * * * deprived of his salary * *
(b) On October 10,1950, the Patent Office effected plaintiff’s separation for disability and ceased paying a salary to him. He was thus deprived of salary. Otherwise, neither of his charges has been substantiated.[2]
3. The period of plaintiff’s employment by the Patent Office that is germane to the issues in this case[3] began on December 28, 1945. On that date plaintiff was given a civil service appointment as a patent examiner and assigned to Division 16. This division was concerned with the arts of telephone, telegraph, and television.
4. (a) One year (more or' less) after his appointment, plaintiff was recommended for promotion by his supervisory examiner, and the promotion was made.[4]
(b) When the time came for an efficiency rating of plaintiff in his new work, he was given a rating of “good.” His previous rating had been “very good.”
(c) Plaintiff thereupon filed a suit for damages against his supervisory examiner, the assistant chief, and other employees of Division 16 of the Patent Office. Plaintiff later *700 (early in 1948) explained to the Personnel Officer[5] that he considered the “good” efficiency rating to be libelous.
(d) Plaintiff appealed the efficiency rating to the Board of Efficiency Bating Appeals. The Board changed the rating to “very good.”
5. (a) Meanwhile, the Personnel Officer reported the situation to his superiors in the Department of Commerce. At their request the Personnel Officer arranged for a physical examination of plaintiff at the Public Health Service. Plaintiff reported for one appointment, but ignored requests that he return. The examination was never completed.
(b) On the basis of an oral report from the Public Health Service of observations made in the course of the incomplete examination of plaintiff, the Personnel Officer again discussed plaintiff’s situation with the Director of Personnel of the Department of Commerce. The latter official suggested that no further official action be taken until after disposition of plaintiff’s suit.
(c) Shortly thereafter, the Solicitor of the Patent Office was assigned by the Commissioner of Patents to assist lawyers in the Department of Justice in the defense of plaintiff’s suit against his supervisor and other employees. Thereupon, plaintiff filed another suit, seeking recovery of $100,000, against the Solicitor and the Personnel Officer of the Patent Office.
(d) At about the same time, plaintiff made a report to the Bureau of Internal Bevenue, naming his chief and assistant chief as having filed false income tax returns, in that they had not reported private income which plaintiff said they had received for the repair of radios, watches, and the like.
(e) Ultimately, plaintiff’s suit against his fellow employees in Division 16 was dismissed by the court. The second suit was dropped by him, because of a requirement that he (being a non-resident of the District of Columbia) post a cash bond to maintain it.
6. (a) Thereafter, the Personnel Officer, having received plaintiff’s promise to desist from further litigation and re *701 lated activity, decided to take no further action with respect to him.
(b)Plaintiff had been transferred, at his own request, out of Division 16.[6] His new assignment was in Division 5, which was primarily concerned with agricultural implements.
Plaintiff’s field of highest competence was in electrical engineering. At the time of his transfer to Division 5, there was some electrical work in that division. As long as plaintiff was occupied with electrical work, he appeared to be content in Division 5, and was happy with his chief and fellow employees. After a while, all items involving electrical work were withdrawn from Division 5, and plaintiff found himself occupied with unfamiliar problems. He then became unhappy with his assignments.
7. (a) Executive Order 9980, containing regulations governing fair employment practices within the Federal establishment, was issued on July 26, 1948. The order directed, in pertinent part, that:
1. All personnel actions taken by Federal appointing officers shall be based solely on merit and fitness; and such officers are authorized and directed to take appropriate steps to insure that in all such actions there shall be no discrimination because of race, color, religion, or national origin. * * *
8. The head of each department shall designate an official thereof as Fair Employment Officer. * * * The Fair Employment Officer shall * * *
(b) Receive complaints or appeals concerning personnel actions taken in the department on grounds of alleged discrimination because of race, color, religion, or national origin.
(c) Appoint such * * * deputies * * * or * * * boards from among the officers or employees of the department, as he may find necessary * * * to investigate, or to receive, complaints of discrimination.
(d) Take necessary or corrective action * * *.
4. The findings or action of the Fair Employment Officer shall be subject to direct appeal to the head of the department. The decision of the head of the department on such appeal shall be subject to appeal to *702 tbe Fair Employment Board of tbe Civil Service Commission ***.***
5. * * * Tbe Board shall * * *
(b) Make rules and regulations * * * deemed necessary * * * under this order.
(b) Instructions for carrying out tbe Fair Employment Program were duly issued (1) by the Civil Service Commission on September 28, 1948, and (2) by the Fair Employment Board thereafter. Within the Department of Commerce the Director of Personnel became the Fair Employment Officer for the Department, and the Personnel Officer became the Deputy Fair Employment Officer for the Patent Office. An administrative instruction was issued to employees in the Department of Commerce, advising them of their rights under the program and of the procedures to be followed in implementing it. Special authorization for the hearing of discrimination complaints was given to the Board of Appeals for Employee Grievances.
8. (a) By letter dated March 27, 1949, addressed to the Commissioner of Patents, plaintiff (1) called attention to Executive Order 9980; (2) referred to the World Almanac of 1949 for the statistic that “for 1937 the percentage of one religious group to the population of the country is 3.69% say 4%”; (3) asserted that the percentage of the same group among employees of the Patent Office was substantially higher; and (4) observed: “Look how slim my chances have become.”
(b) Eight months later, on November 15, 1949, plaintiff filed with the Personnel Officer, as Deputy Fair Employment Officer, an appeal in writing.[7]
*703 (c) The appeal cited as authority the Executive Order 9980, Article VI of the Constitution, and the Sherman AntiTrust Act, and recited as its subject:
* * * Transfer from the electrical physics Arts to the Agricultural Arts.
* * * Eeduction in possibilities of promotion and advancement.
In the appeal plaintiff averred that his transfer from the electrical arts had been effected “as a result of the plans of a 3.6+ percent religious minority group to obtain a working monopoly” of the patent system, cited “facts” (drawn from his own conclusions) in support of the assertions, and asked
(1)that his promotion chances be increased, (2) that he be returned'to electrical work, and (3) that the “final efficiency appeal board be staffed by members representative of average groups of citizens and not by 3.6+ percenters.”
(d) In discussing the appeal with plaintiff, the Personnel (Deputy Fair Employment) Officer learned that the complaints were, more specifically: that plaintiff had not been promoted to the position of division chief because of a “color line” that controlled the appointments to division chief positions; (2) that plaintiff was not being used on electrical cases; and (3) that the composition of the efficiency rating committee was unbalanced.
(e) The Personnel (Deputy Fair Employment) Officer pointed out to plaintiff:
(1) That no one who would have any responsibility for plaintiff’s appointment as a division chief belonged to the racial group in question; that, in addition, men were not moving into those positions with less than 25 to 30 years of experience; and that plaintiff would reach the age of compulsory retirement before he could accumulate so many years of experience;
(2) That the membership of the efficiency rating committee did not include a single individual of the racial group hi question; and, moreover, that its composition remained as it was at the time of plaintiff’s appeal, which was favorably acted upon; and
(3) That plaintiff had been transferred out of Division 16 at his own request; and that while it was unfortunate that *704 electrical mechanisms had been removed from Division 5 after plaintiff’s assignment there, none of the persons responsible for the removal belonged to the racial group in question.
(f) The Personnel (Deputy Fair Employment) Officer further pointed out to plaintiff that as far as he was concerned, in his capacity as Deputy Fair Employment Officer, there was no basis for the complaint; but that plaintiff was entitled, under the regulations, to a written decision, which would be furnished to him if he so desired, and he could appeal to the Fair Employment Officer.
(g) Plaintiff thereupon told the Personnel (Deputy Fair Employment) Officer that he did not want a written decision, and that the extent of his desire was for a transfer back to an electrical division, such transfer to be in terms of normal placement activity and not as a result of a grievance procedure. The Personnel Officer agreed to see whether or not such a transfer could be arranged.
(h) Some time later the Personnel Officer reported to plaintiff that no suitable spot had yet been found for the transfer, and advised him again that if he wanted a definite written decision on the discrimination grievance, he was entitled to it and would receive it. Plaintiff again said that all he wanted was to be put into an electrical division, and that all he wanted the Personnel Officer to do was to continue to try to accomplish such a transfer.
(i) No decision in writing was made on plaintiff’s grievance by the Personnel (Deputy Fair Employment) Officer, because he understood the appeal to have been withdrawn. His conclusion in this regard was reasonable under the circumstances.
9. Administrative Order 202-20 (Amended), Department of Commerce, effective September 7, 1949, set forth detailed procedures for the separation or suspension of employees of the Department, including separations for disqualification, inefficiency, disability, retirement, transfer, legal incompetence, military service, and reduction in force.
10. (a) In late 1949 or early 1950, determination was made by the Patent Office that plaintiff was unsuitable for *705 continued employment.[8] On February 7, 1950, application was made by the Patent Office to the Civil Service Commission to effect plaintiff’s retirement for disability. The regulations authorized and directed the agency to make the application if the employee would not.
(b) On March 27, 1950, the Civil Service Commission formally notified plaintiff that a medical examination was necessary “in connection with your retirement on disability * * and directed him to call a specified telephone number for an appointment with a named doctor.
(c) On March 29,1950, plaintiff acknowledged receipt of the notice and advised the Civil Service Commission (1) that on two occasions he had written to the President of the Commission regarding his appeal under Executive Order 9980; (2) that he was waiting on the Fair Employment Officers of the Department of Commerce and the Patent Office to “give proper consideration” to his appeal; and (3) that “when, as an American citizen, I am accorded proper answers to my letters as above, your letter will receive an honest, conscientious reply immediately.” [9]
(d) On June 9, 1950, the Civil Service Commission (1) wrote to the Patent Office that “inasmuch as Mr. Garlock refuses to report for medical examination the application [for retirement by reason of physical disability] has been abandoned;” and (2) enclosed a copy of the foregoing in a letter to plaintiff, notifying him that the application had been abandoned.
*706 (e) On June 12, 1950, plaintiff wrote the Civil Service Commission that “the statement in your letter ‘inasmuch as you refuse to report for medical examination’ is unquali-fiedly false and deliberately misleading.”
11. Section 7.01 of Administrative Order 202-20 defined separation for disability as “the action taken to effect the separation of an employee who is ineligible for disability retirement, but whose mental or physical condition renders him incapable of performing the duties of his position in a satisfactory manner.” Section 7.02 provided as follows:
.02 Administration — An employee who becomes incapable of performing the duties of his position in a satisfactory manner by reason of mental or physical disability and who is ineligible for retirement under the Civil Service Eetirement Act because he has not completed an aggregate of five years of creditable service or for other reasons will be separated. The action should be based on adequate and specific evidence of mental or physical disability, including a report from a private physician or Federal medical officer. The head of the primary organization unit may order the examination of an employee if he refuses to submit voluntarily to an examination. If the employee persists in his refusal, the action to separate him nevertheless will proceed. Employees eligible for disability retirement under the Civil Service Eetirement Act, who make application for such retirement, will be separated in accordance with the provisions of A.O. 202-14 (Amended). However, should such employees refuse to make application for disability retirement, they will be separated in accordance with the provisions of this section. In such cases the employee concerned should be informed of his right to make application for disability retirement direct to the Civil Service Commission, but that this right will lapse six months after the date of separation.
12. (a) On July 11,1950, the Executive Officer of the Patent Office wrote to plaintiff:
You are hereby notified that action to separate you from the rolls of the Patent Office for disability is being considered. On February 7, 1950, an application was completed by the Patent Office under Section 6 of the Civil Service Eetirement Act and transmitted to the *707 Civil Service Commission requesting that your eligibility for disability retirement be determined. The Civil Service Commission has advised this office that you have refused to report for medical examination. _
_ The Department of Commerce regulations provide that: “The Head of the primary organization unit may order the examination of an employee if he refuses to submit voluntarily to an examination. If the employee persists in his refusal, the action to separate him nevertheless will proceed.”
You may reply in writing, setting forth your reasons why the Patent Office should not proceed as indicated and furnishing affidavits in support of your reply, within five (5) calendar days of the date of receipt of this letter. You will be continued in a duty status pending final disposition of your case. Full and prompt consideration will be given to your reply and in the event the decision to remove you from the rolls of the Patent Office is sustained, or if you fail to reply within the time limit specified, action will be taken to separate you for disability.
(b) This letter was delivered to plaintiff, who signed for its receipt, on the same day. On the receipted copy plaintiff wrote and signed the following note, also dated July 11, 1950:
My only reply is that made to the Civil Service Commission some weeks back.
13. (a) On July 18, 1950, the Executive Officer of the Department of Commerce delivered to plaintiff (who signed for its receipt) a Notification of Personnel Action containing the following advice:
Separation because of physical disability. Notice of charges given in letter delivered personally on July 11, 1950, to which a satisfactory reply has not been received. Your last day in duty status will be July 28,1950. You will then be carried on sick leave through expiration of such leave on October 13, 1950, at 2:00 p.m., providing you do not use any sick leave in the interim, at which time your separation will become effective. However, you have the right to appeal, in writing, to the Patent Office Board of Grievance Appeals within three calendar days from the date this notice is received. Failure to appeal within the specified three days will forfeit the right of appeal. If, as a result of an appeal, the deci *708 sion is not to effect your separation, this action will be cancelled. If the decision supports the separation action, you will be so notified and this action will be allowed to stand as written.
(b) Plaintiff filed an appeal in writing, addressed to the “Employee Grievance Board,” wherein he asked the Grievance Board (1) to “have the separation action of July 18, 1950, declared null and void,” and (2) “* * * if they find that threats, coercion and conspiracy to cover up corruption have been employed against appellant that appropriate recommendations be made.” In the appeal plaintiff asserted, inter alia:
* * * That the actual purpose of the Executive Officer’s action is to prevent appellant from appearing before the President’s Appeal Board [on Fair Employment Practices];
* * * To cover up corruption.
* * * To force appellant to abandon Suit No. 3038-50 filed in the U.S. District Court.[10]
(c) Plaintiff was afforded a hearing before the Board of Appeals for Employee Grievances on July 25, 1950, and, on the same day, that Board addressed to the Commissioner of Patents the following memorandum:
This is a decision by the Board of Appeals for Employee Grievances in the appeal of Mr. Edward A. Gar-lock from action by the Patent Office separating him because of physical disability.
It was aUeged that Mr. Garlock had refused to take a physical examination ordered by the Civil Service Commission, which allegation was denied by Mr. Garlock. The finding of this Board, based upon all evidence presented to it, is that Mr. Garlock failed to take the physical examination which he was ordered to undergo and that he has made no effort to submit to such an examination even though more than three months have elapsed.
Mr. Garlock has alleged no irregularities, within the jurisdiction of this Board, in the proceedings of the Patent Office in following out the appropriate regulations dealing with separation for physical disability as set forth in Administrative Order 202-20. This Board *709 can take no cognizance of allegations as to the motives for the institution of such proceedings. It is the finding of this Board that the proceedings, both as to the requirement of a physical examination and as to the separation for physical disability, were proper and according to Administrative Order 202-20. There is no evidence of irregularities.
It is recommended that the separation of Mr. Edward A. Garlock for reason of physical disability be consummated.
(d) On July 28,1950, the Commissioner of Patents wrote to plaintiff as follows:[11]
The Board of Grievance Appeals heard your appeal from the separation (disability) action on July 25,1950. The Board has reported to me that:
“It is the finding of this Board that the proceedings both as to the requirement of a physical examination and as to the separation for physical disability were proper 'and according to Administrative Order 202-20, there is no evidence of irregularities.
“It is recommended that the separation of Mr. Edward A. Garlock for reason of physical disability be consummated.”
Since you failed to comply with the request of the Patent Office and the Civil Service Commission that you submit to a physical examination to determine your physical fitness, the regulations of the Department of Commerce provide that you be separated from its rolls. Accordingly no change will 'be made in the action on Standard Form 50 dated July 18, 1950, effecting your separation for disability at the expiration of your sick leave on October 10, 1950, at 2 P.M.
14. (a) On December 10,1950, plaintiff wrote to the Secretary of Commerce stating (1) that he had filed an appeal with the Deputy Fair Employment Officer of the Patent Office under Executive Order 9980 on or about November 15, *710 1949; (2) that a short time thereafter he had called at the office of the Deputy Fair Employment Officer to inquire as to the result of his appeal, and was told that there were no vacancies in any of Mr. Crocker’s divisions, but that he would be offered the first vacancy that occurred; (8) that he had heard nothing more until he received a letter from the Civil Service Commission ordering him to report for a physical examination, which he refused to do until his appeal had been carried through,’ and (4) that he was appealing to the Secretary “for such action as you think just.”[12]
(b) On January 11,1951, the Director of Personnel of the Department of Commerce wrote to plaintiff:
The Secretary has referred to me your letter of December 10, 1950, concerning the appeal which you state you filed with the Deputy Fair Employment Officer for the Patent Office, under Executive Order 9980.
A .review of the records shows that on November 15, 1949, you filed an appeal under Executive Order 9980 and that the appeal was discussed with you by the Deputy Fair Employment Officer for the Patent Office. The record shows further that you did not avail yourself of the opportunity to appeal the decision of the Deputy Fair Employment Officer to the Fair Employment Officer for the Department within the ten calendar days, or a reasonable period thereof, as provided in Administrative Order 202-2, which outlines the Department’s fair employment grievance procedure.
On October 10, 1950, you were separated because of physical disability from the position of Patent Examiner, GS-11, in full compliance with applicable civil service rules and regulations. You appealed this action and, in accordance with the Department’s employee grievance procedures, you were given a hearing before the Board of Grievance Appeals for the Patent Office, *711 at which yon were afforded full opportunity to present all pertinent information.
Under the circumstances, there is no further action which may be taken on your letter of December 10.
15. On February 13,1952, the Executive Secretary of the Fair Employment Board of the Civil Service Commission wrote to plaintiff:
Your letter of January 11,1952 to the Honorable Donald Dawson at the White House has been referred to this Board.
Records of the Board disclose that on January 22,1951 the following information was furnished you:
“Regulations of the Board provide that any appeal to the Board must be made within 10 days of the date of receipt of a decision of a head of a department on a specific issue of discrimination in a personnel action because of race, color, religion, or national origin. Since you indicate that you have complied with the procedures established pursuant to Executive Order 9980, it is suggested that if you have received a decision under Executive Order 9980 from the head of an executive department, that you forward a copy of such decision to this Board.”
To date the Board has not received from you a copy of a decision rendered by a head of an executive department or agency pursuant to Executive Order 9980.
In the absence of such decision under Executive Order 9980, there is no action to be taken by the Board in your case.
16. The action of the Patent Office in effecting plaintiff’s separation from the rolls for disability was procedurally correct. The actions taken to that end by the various responsible officials of the Department of Commerce and the Patent Office were taken in good faith. None of such actions was arbitrary or capricious.

 Plaintiff’s petition for writ of certiorari denied by the Supreme Court, 368 U.S. 971.

 The petition in case numbered 50349 was filed on October 9, 1951, while the petition in case numbered 495-52 was filed on October 7, 1952. The two petitions are identical, except that the prayer for judgment in the later petition covers an additional year.

 Throughout the trial of these actions, and in the submission of briefs and requested findings of fact, plaintiff has been unable or unwilling to differentiate between his own suspicions (or conclusions based on suspicions) and evidence which might tend to prove his allegations.

 Plaintiff had once before been employed by the Patent Office.

 When the promotion was recommended, plaintiff had not served the time normally required for promotion of an examiner in his grade.

 The reference is to the Personnel Officer of the Patent Office. The Director of Personnel of the Department of Commerce was his administrative superior.

. The reguest was made wMle Ms suit against Ms supervisory officials and colleagues in Division 16 was still pending.

 In the appeal plaintiff named himself as appellant, and as appellees, the President of the United States, the Chairman of “the President’s Fair Employment Practices Commission,” the Secretary of Commerce, the Commissioner of Patents, the Director of Personnel of the Department of Commerce (also named as Fair Employment Officer), and the Personnel Officer of the Patent Office (also named as Deputy Fair Employment Officer).
As a covering document, plaintiff attached a picture of a group of persons, robed and hooded, holding crosses, standing by a fire, with a note: “Here comes Joan (maybe).” Plaintiff testified that when he first raised the question of a discrimination grievance with the Personnel Officer, that official had asked him if he wanted to become a Joan of Arc.

 Plaintiff had again given evidence of agitation. On February 24, 1950, he forwarded to the Secretary of Commerce a copy of a “confidential” letter he had written to President Truman, advising the President of his intention presently to file “two damage suits against the Masonic Secret Society, the Order of the Eastern Star, the Johns Hopkins Research Institute of Silver Spring * * * et al., alleging * * * a conspiracy on the part of its members to ruin my family and I via their underground & slanderous statements * * * [and] inability to obtain a proper hearing in accordance with your executive order 99S0 and involving Masonic discrimination in Civil Service Employment.”
At the trial of the instant cases plaintiff placed more emphasis on “Masonic discrimination” than on the “religious minority” allegation of his petitions. He testified that in his mind there was an identity between Jews and the Masonic Order.

 He then added a caveat to the effect that he might “ask for time to have a doctor OK’d by disinterested parties in case I agree to one * *

 This suit was one of several filed by plaintiff after the dismissal of his suits against officers and employees of the Patent Office.

 Between July 25 and July 28, 1950, the Personnel Officer addressed the following note to the Director of Personnel: “The appeal of Edward A. Gar-lock from the Patent Office action to separate him for physical disability was heard by the Board of Appeals for Employee Grievances on July 25, 1950. The decision of the Board upheld the Patent Office action. Mr. Garlock left the Office at close of business on July 25, 1950, before receiving written notification of the Board’s decision. He will be carried on sick leave from July 26, 1950, through October 10, 1950, at 2 P.M., at which time his separation will be effected by reason of physical disability.”

 Attached to the letter were additional sheets, (1) naming plaintiff as appellant, and, as appellees, the President of the United States, the Chairman of “the President’s Pair Employment Practices Commission,” and the Secretary of Commerce, and (2) citing as authority Executive Order 9980, Article VI of the Constitution, and the Sherman Anti-Trust Act. Beneath the foregoing there appeared the following: “Appellant appeals from being a victim of illegal, unlawful, un-American, unprecedented efforts and plans to obtain control of the United States Patent System by a 3.6+% minority religious group, perfectly organized. Appellant further appeals from being the victim of religious persecution on the part of this minority religious group, while acting as a Civil Service Employee.”